### McCORMICK, Tax Collector, v. PURITAN COAL MINING CO. et al. *

Circuit Court of Appeals, Third Circuit.
September 26, 1928.

No. 3749.

Woolley, Circuit Judge, dissenting in part.

F. F. Reamer, W. H. Unger, Marlin S. Unger, and J. A. Welsh, all of Shamokin, Pa., for appellant.

M. J. Martin and Paul G. Collins, both of Scranton, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge. A creditor's bill was filed against the Puritan Coal Mining Company averring that it was possessed of assets consisting in part of anthracite coal lands and mining properties in op-

*Certiorari denied 49 S. Ct. —, 73 L. Ed. —.

eration and producing coal, and having a value in excess of its liabilities, if treated as a going concern, that the defendant had pressing obligations which it was presently unable to meet, and that many of its creditors were demanding immediate payment and threatening legal proceedings. An answer was filed admitting the averments of the bill, whereupon receivers were appointed for preservation of its assets for the benefit of all its creditors, with leave to continue the business and operate the mines for the production and sale of coal. Subsequently, within a year, it appearing that the company was insolvent and its business could not be conducted and its properties operated save at a loss, the real and personal property of the defendant was sold under a decree of the court. The receivers filed an account which was referred to a special master to pass upon exceptions filed to the account and to report a schedule of distribution.

Certain claims for taxes were presented before the master by the appellant as collector of taxes for Coal township in Northumberland county as preferred debts, and entitled to be first paid out of the proceeds of the sale. Among these were a claim for taxes assessed upon the real estate for the year 1922, amounting to $9,726.31, and a claim for taxes for the year 1924, amounting to $1,124.91, assessed against the Buck Ridge Coal Mining Company upon the value of certain of its personal property which had been purchased by the Puritan Coal Mining Company. The master disallowed these two items of taxes as preferential claims, to which rulings the appellant duly excepted. This appeal was taken from the decree of the District Court dismissing the exceptions.

The bill and answer were filed on March 18, 1925; on the same day a receiver was appointed; and on December 21, 1925, a co-receiver appointed. Whatever claim the municipal authorities had to a lien for taxes upon the real estate of the defendant is derived from the provisions of the Pennsylvania Act of May 16, 1923, P. L. 207 (Pa. St. Supp. 1928, § 15962b1 et seq.). Section 2 of that act declares that all taxes theretofore lawfully imposed or assessed by any municipality on any property in the commonwealth in the years 1921, 1922, and 1923 shall be a first lien on said property, which shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property before any other obligation, judgment, claim, lien, or estate with which the property may become charged or for which it may become liable. Section 9 provides that claims for taxes must be filed in the court of common pleas of the county in which the property is situated on or before the last day of the third calendar year after that in which the taxes are first payable. Section 16 provides that, if a claim be not filed within the time aforesaid, or if it be not prosecuted in the manner or at the time aforesaid, its lien on real estate shall be wholly lost.

The master in a very carefully prepared report held that, inasmuch as the taxes for 1922, assessed against the real estate, were assessed and payable in 1922, and the third calendar year exclusive of 1922 ended with December, 1925, and no claim had been filed with the court of common pleas within that time, the lien on the real estate was "wholly lost." He held that the Act of 1923 must be construed in the light of the Act of March 21, 1806, § 13, 4 Sm. L. 326, which provides that "in all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of Assembly of this commonwealth, the directions of the said acts shall be strictly pursued." Pa. St. 1920, § 45.

The right to recover the taxes for 1922 as a preferred claim rests upon the determination of the question whether the decree, under which the property of the defendant passed into possession of the court through its receivers, tolled the running of the limitation of their lien under the Act of 1923. Under the provisions of that act, the taxes became a lien at the time of their assessment, and the lien was still in effect when the court took the property into its custody by virtue of its decree upon a creditor's bill. It is undisputed, and was conceded at the argument, although there is no averment in the bill setting up insolvency, that the Puritan Coal Mining Company was insolvent when the bill was filed. We have then a situation where receivers were appointed to take over the property of an insolvent corporation.

Although a corporation is not definitely known to be insolvent at the time its property is taken into the custody of the court, and receivers are given authority to conduct the business of the defendant as a going concern, nevertheless the general rule is that the rights of creditors are fixed by the facts as they then stand. Blum Bros. v. Girard National Bank, 248 Pa. 148, 93 A. 940, Ann. Cas. 1916D, 629; Cowan v. Plate Glass Co., 184 Pa. 1, 38 A. 1075.

The assets of the coal mining company were taken into the custody of a court of equity through its receivers upon a creditor's bill for its preservation for the benefit of all

of its creditors, and, if the statute of limitation between creditors claiming their proportion of the insolvent trust estate on the ground that the period of limitation had expired since the trust was created were applied, it would conflict with long and well-established doctrines to the contrary. The general rule of equity, which has been sustained in that class of cases where an insolvent debtor's property has come into the custody of the court to be distributed under equitable principles for the cestuis que trustent, is that the rights of all parties are fixed as of the time when the property was taken into the custody of the court. Heckert's Appeal, 24 Pa. 482; McClintock's Appeal, 29 Pa. 360; Kirkpatrick v. McElroy, 41 N. J. Eq. 539, 7 A. 647.

It was held by this court, in Ludowici Celadon Co. v. Potter Title & Trust Co. (C. C. A.) 273 F. 1009, in an opinion by Judge Buffington, that a creditor who had a valid judgment lien against the land at the time of the judgment debtor's bankruptcy need not thereafter revive his judgment by scire facias to preserve the lien as against the trustee and the existing creditors, since the rights of all parties became fixed at the time of the bankruptcy. In that case, the ruling of Judge Acheson in Re McKinney, Bankrupt (D. C.) 15 F. 912, was followed. It was there held that mere lapse of time will not bar a claim against a trust estate valid and in full life when the trust was created, so long as the estate is unadministered and the trust subsists.

In the case of an insolvent estate in the hands of an assignee in trust for them under the Pennsylvania statute in Coates' Estate, 2 Pars. Eq. Cas. (Pa.) 258, it was held that such an assignment, as between assignor and creditor, is a direct trust, on which the statute of limitation does not operate.

In McCandless' Estate, 61 Pa. 9, it was held that, while the death of a debtor does not suspend the running of the statute as respects the right of action, nevertheless, where the limitation had not expired at the death of a decedent and the decedent's personal estate had passed to his personal representatives on the express trust and confidence that they would give to the creditors their just proportions, the statute cannot be pleaded when the creditor proceeds in the orphans' court for a distributive portion of the debtor's estate.

In the instant case, it was set out in the bill that the defendant, in addition to an outstanding mortgage debt of approximately $1,250,000, had liabilities of upward of $75,000, including taxes, and there was a prayer for a receiver for the protection of all creditors. The purpose of the receivership, therefore, was to protect municipalities having tax claims as well as other creditors. Under the general equitable rule, which has been applied in the courts of Pennsylvania in a long line of cases following those above cited and in this court in Ludowici Celadon Co. v. Trust Co., supra, we think the tax claim should have been allowed as a preferred claim, unless the Pennsylvania act of 1806 means that a creditor, having a valid lien for taxes when the receiver was appointed, loses his lien by failure to file the tax claim in the court of common pleas before the end of the third calendar year.

Did the appellant fail to strictly pursue a remedy provided or duties enjoined or anything directed to be done by an act of the commonwealth of Pennsylvania? He had an entirely valid tax lien when the receivers were appointed.

The property upon which the taxes were a lien was then in the custody of a court of equity. If the bill had been filed against the Puritan Coal Mining Company in a Pennsylvania court of common pleas sitting as a court of chancery, the court would have had jurisdiction under the Act of May 4, 1893, P. L. 29, § 1 (Pa. St. 1920, § 4565) which gives the several courts of common pleas of the commonwealth, having the power of a court of chancery, jurisdiction of all litigation and disputes between creditors and the corporation over all corporations within the State. See, also, Act of June 16, 1836, P. L. 784, § 13; Constitution of 1874, art. 5, § 20.

The subject-matter of the litigation and the dispute being upon a creditor's bill brought for the benefit of all creditors, the suit is clearly a remedy provided by an act of the commonwealth of Pennsylvania. The suit being brought in a federal court by reason of the diversity of citizenship of the parties, the creditors have the same remedy they would have had if the suit had been brought in a state court, a remedy open to the appellant as to all other creditors under the terms of the bill. The appellant, therefore, finding the property upon which his lien was fixed in the custody of the court below, pursued a remedy identical with that provided by the Pennsylvania act of 1893, an incident of which was that his claim was fixed as of the time of appointment of receivers, and it was not necessary for him to proceed further under the act of 1923 in order to accomplish what was already accomplished by the appointment of receivers to take custody of property of the corporation of which he was

334

a creditor having a fixed claim by virtue of his lien.

He presented it in a court where well-established equitable rules prevail. If it were necessary for the appellant to continue to pursue a remedy after his rights were fixed because the direction of the act of 1923 must be strictly pursued, such ruling would be entirely in conflict with the established doctrines of equity, and, where a trust has been created for the benefit of all creditors, the pursuing of other statutory remedies would result in endless delay and confusion in establishing their rights. A judgment creditor, as in the Ludowici Celadon Case, would be required to issue a scire facias before the expiration of five years. A holder of a promissory note, as in the McKinney Case, would be obliged to have a judgment in his favor before he could prove his debt in bankruptcy.

The foregoing conclusions are not in conflict with Brotzman v. Riehl, 119 Pa. 645, 13 A. 483, or Yetter v. Railroad Co., 206 Pa. 485, 56 A. 57. In Brotzman's Appeal, the plaintiff had attempted to proceed by bill in equity for enforcement of provisions in a will which, it was claimed, were charged upon the real estate of the testator. The bill was held to have been rightly dismissed because a complete remedy for enforcement of the plaintiff's rights was provided by section 59 of the Act of February 24, 1834, P. L. 84, conferring jurisdiction upon the orphans' court, which was exclusive of both the equity and common-law jurisdiction of the court of common pleas. In Yetter v. Delaware Valley Railroad Co., a bill in equity was filed for the appointment of a master to conduct a corporate election and to declare an issue of stock invalid. It was held that no such suit could be maintained by a stockholder, for the reason that, under the Act of May 7, 1887, P. L. 94 (Pa. St. 1920, §§ 18418–18422), which was passed to carry into effect section 7, art. 16, of the Constitution of Pennsylvania, relating to the illegal increase of stock of a corporation, the exclusive remedy was by proceedings on the part of the Attorney General.

Here the appellant had a remedy provided by the Act of May 4, 1893, which he pursued by proving his claim in a court of equity which had taken custody of the assets of the corporation. The District Court therefore was in error in dismissing the exceptions to the disallowance of this claim.

■ In regard to the personal property taxes for the year 1924, which were disallowed by the master, it was found by the master as a fact that the personal property at the time the taxes were laid, did not belong to the Puritan Coal Mining Company and that the taxes were not assessed against the Puritan Coal Mining Company, but against the Buck Ridge Coal Mining Company, the owner at the time of assessment. That being the case, the tax was not an obligation of the Puritan Coal Mining Company, and the claim was properly disallowed, and the exceptions properly dismissed.

In so far as the court below dismissed the exceptions of the appellant to the report of the master disallowing the claim for municipal taxes upon the real estate of the Puritan Coal Mining Company for the year 1922 in the sum of $9,726.31, its decree is reversed, and it is ordered that said claim for taxes be allowed as a preferred claim against the proceeds of the sale of the real estate. In all other respects, the decree is affirmed.

WOOLLEY, Circuit Judge (dissenting). Believing that the cited Pennsylvania Tax Act is mandatory and that its provisions, in order to preserve tax liens, must in all cases be strictly and literally observed, I am constrained to dissent from that part of the court's judgment which allows the claim for taxes assessed against the corporation's real property as a preferred claim against the receivership fund.